**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Richard White, | ) | |
| | ) | **ORDER GRANTING DEFENDANTS'** |
| Plaintiff, | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | |
| Michael Crow Ghost, Ben Half, Gary | ) | |
| Sandland, Douglas Wilkinson, and | ) | Case No. 1:05-cv-042 |
| Mike Yellow, | ) | |
| | ) | |
| Defendants. | ) | |

___

Before the Court is the Defendants' Motion for Summary Judgment filed on July 13, 2006, and Plaintiff's Motion to Extend Deadline filed on August 23, 2006. For the following reasons the Defendants' Motion for Summary Judgment is granted.

**I.      BACKGROUND**

From March 6, 2002 – March 29, 2002, the plaintiff, Richard White (White), was incarcerated in a tribal jail in Fort Yates operated by the Bureau of Indian Affairs. See Docket No. 36-1. During that time, defendant Michael Crow Feather (who is misnamed in the caption as Michael Crow Ghost), Ben Halfe (who is misnamed in the caption as Ben Half), Douglas Wilkinson, and Mike Yellow were BIA officers, and defendant Gary Sandland was a tribal employee at the jail facility. See Docket No. 42. White alleges that the defendants violated his constitutional rights by (1) failing to provide adequate medical care, (2) housing him in unsanitary conditions, and (3) delaying or preventing bond hearings.

On March 6, 2002, White was arrested and held in custody at the BIA Standing Rock Agency's Fort Yates Detention Center in Fort Yates, North Dakota. White contends that he

requested bond and was told that his bond would be set at a future court appearance. White also requested a phone call and alleges in his complaint that the request was denied. See Docket No. 36-1. However, White states in an affidavit that he did call his mother the evening of March 6, 2002. See Docket No. 47-7. White also contends that he requested food and medical attention because he felt depressed and suicidal but neither were provided at the jail.

On March 7, 2002, White alleges that his requests for phone calls were denied and that he did not receive a bond hearing. See Docket No. 36-1. The Cell Check Log reveals that White was allowed to place telephone calls to his lawyer and daughter. See Docket No. 43-17. Between March 8, 2002, – March 11, 2002, White alleges that his repeated requests to see a physician were denied and he remained depressed. On March 12, 2002, White acknowledges that he was provided a bond hearing and was represented by counsel. See Docket No. 36-1. The Cell Check Log reveals that White was permitted to call a bondsman on March 12, 2002. See Docket No. 43-15.

Between March 13, 2002 – March 19, 2002, White sent out several bond reduction forms but received no response. White contends that his repeated requests to see a physician were denied. See Docket No. 36-1. During this time period, the Cell Check Log reveals that White was allowed to place several phone calls, including a call his attorney. See Docket No. 43-12.

Between March 20, 2002 – March 25, 2002, White apparently ate little or nothing. Although he alleges several requests were made to see a physician, no medical attention was provided, nor did he receive a response to his repeated requests for a bond reduction. See Docket No. 36-1. The Cell Check Log reveals that White was permitted to make one phone call. See Docket No. 42. According to the Log, during this time period White used a razor to cut off half of his hair, stuffed

soiled toilet paper into the lock on his cell door, and made a small cut on his wrist with his teeth. See Docket No. 43-11; Docket No. 43-9.

On March 23, 2002, the Cell Check Log indicates that White had a minor cut on his wrist with some dried blood. When asked how that occurred, White indicated that he "did it with his teeth" and laughed. On March 25, 2002, White alleges that he requested to speak to someone at Indian Health Services (IHS) in Fort Yates. He was permitted to place two telephone calls to IHS. It was noted that when asked why he was not eating, White advised officials that he was fasting and praying. White spoke with Diane Gates at IHS on two occasions during the afternoon of March 25, 2002. He advised officials that by tomorrow (March 26) he was going to cut his wrists. Later that afternoon, the jailer discovered scratches on White's wrists and the scratches were cleaned and bandaged. The record reveals that White attempted to cut his wrists with a phone card.

On March 25, 2002, at approximately 4:00 p.m., White was moved to a cell where there were cameras to monitor him because of the suicide gesture. See Docket No. 43-9. White alleges that the cell was dirty and had human feces and urine stains on the floor. See Docket No. 36-1. White also complained of being cold. The jailer allegedly refused to provide White with a blanket and told him to go to sleep. Thereafter, it is alleged that White used his coveralls and tried to hang himself. The jailers apparently discovered White in the midst of a suicide attempt, stopped him, and stripped him to his underwear.

On March 26, 2002, at approximately 2:15 a.m. (two and half hours after White was stripped to his underwear), White was moved to a different cell and was provided with a mattress and blanket. See Docket No. 43-21; Docket No. 36-1. According to White, the new cell had food and feces on the floor and walls, and the cell was dirty. See Docket No. 36-1. White alleges that on

March 26, 2002, he was taken to IHS where a social worker told him that he would be taken to a psychiatric unit in Bismarck as soon as a unit was available.  The jailer also took White to see a physician where White's wrist injury was cleaned and bandaged.  The physician in Fort Yates prescribed and issued an anti-depressant (Zoloft) and an inhaler for White.  See Docket No. 47-2. White alleges that he was not given these medications.  However, the Cell Check Log reveals that White was issued medications on March 26th.  See Docket No. 43-7.

In his complaint, White alleges that on March 27, 2002, he neither received medication nor food.  See Docket No. 36-1.  However, in his journal entry for that day, White noted that he was issued his medications and was also given a sandwich to eat at noon.  See Docket No. 47-2.  The Cell Check Log reveals that White was issued medications on March 27, 2002, at approximately 7:00 a.m.  See Docket No. 43-6.

White contends that he requested cleaning supplies on March 28, 2002, to clean his cell but the request was denied.  See Docket No. 36-1.  On that date, White notified the jailer of a red streak running up his arm, and he was taken to see a physician in Fort Yates.  White was given a penicillin shot and the physician cleaned the wound.  White was also issued medications that day. On March 29, 2002, White was again issued his medications and was moved to an isolation cell as space was needed for a large number of incoming detainees.  On that same date, White was transported to Bismarck and placed in federal custody.

## II. STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003). A mere trace of evidence supporting the non-movant's position is insufficient. A non-movant must present more than a scintilla of evidence and must present specific facts to create a genuine issue of material fact for trial. F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir.1997). The facts must generate evidence from which a jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. LEGAL DISCUSSION

#### A. BIVENS AND SECTION 1983 CLAIMS

It is well-established that state officials acting in their individual capacities are amenable to suit under 42 U.S.C. § 1983. Hafer v. Melo, 502 U.S. 21 (1991). An action under Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), is the federal analog to actions brought against state officials under 42 U.S.C. § 1983. See Wilson v. Layne, 526 U.S. 603, 609 (1999).

The United States Supreme Court has held that "government officials are entitled to some form of immunity from suits for damages." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). The doctrine of qualified immunity shields government officials from suit under both 42 U.S.C. § 1983 and Bivens if the officers acted reasonably and in a manner that did not violate clearly established law. Anderson v. Creighton, 483 U.S. 635, 638 (1987); see Saucier v. Katz, 533 U.S. 194 (2001) (analyzing qualified immunity defense to a suit against a federal official under Bivens). The Supreme Court has generously construed qualified immunity protection to protect "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

To determine whether prison officials are immune from suit, the Court must review three factors: (1) whether White has alleged conduct that violates a constitutional right; (2) whether the constitutional right was clearly established; and (3) whether a reasonable officer knew or reasonably should have known that his conduct would have violated a constitutional right. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006).

White asserts three violations of his constitutional rights under the Eighth Amendment; namely, cruel and unusual punishment violations for (1) failure to provide adequate medical

6

treatment (2) unsanitary and demeaning living conditions, and (3) excessive bail violations for the defendants' failure to promptly provide White with a bond hearing.  As a pretrial detainee, the Eighth Amendment claims are properly analyzed as Fourteenth Amendment due process violations. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  However, the distinction is academic because "[u]nder the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment."  Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003).

### B. FAILURE TO PROVIDE ADEQUATE MEDICAL TREATMENT

#### 1) EIGHTH AMENDMENT CLAIMS

The Eighth Amendment prohibits prison officials cruel and unusual punishment of inmates. Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001).  This prohibition against cruel and unusual punishment obligates prison officials to provide inmates in their custody with medical care.  It is well-established that the Government is obligated to provide medical care for those who are being punished by incarceration.  "The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates."  Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002).  The Eighth Amendment protects inmates from deliberate indifference to their serious medical needs.  Though White was a pretrial detainee, rather than a convicted prisoner, it is undisputed that the substantive due process claim is governed by the same deliberate indifference standard.

To define deliberate indifference, the Supreme Court has adopted the criminal law subjective standard of recklessness – "the official must both be aware of facts from which the inference could

7

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Moore v. Briggs, 381 F.3d 771, 773-774 (8th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interferring with treatment or medication that has been prescribed. Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995). In a case alleging deprivation of medical care, an inmate must show that the jail official acted with deliberate indifference to the inmate's serious medical needs. Camberos v. Dranstad, 70 F.3d 174, 175 (8th Cir. 1995).

In order to find a prison official liable for a deliberate indifference claim, an inmate is required to show that (1) there existed a substantial risk of serious harm to the inmate, and (2) that the prison official knew of and disregarded that need. Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002). It is clear from case law that a showing of deliberate indifference is much greater than gross negligence and requires more than mere disagreement with treatment decisions. Gibson v. Weber, 433 F.3d 642, 646 (8th Cir. 2006). To satisfy the deliberate indifference standard, the inmate must show (1) an objectively serious medical need, and (2) subjectively that the defendants "actually knew of but disregarded, or were deliberately indifferent to [White's] health or safety." Grayson v. Ross, 454 F.3d 802, 808-809 (8th Cir. 2006).

### 2. SERIOUS MEDICAL NEED

To satisfy the first prong of the deliberate indifference standard, "an objectively serious medical need or a deprivation of that need ... must be either obvious to a layperson or supported by medical evidence, like a physician's diagnosis." Grayson v. Ross, 454 F.3d 802, 809 (8th Cir. 2006) (citing Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995)); see Johnson v. Busby, 953 F.2d 349,

351 (8th Cir. 1991) (stating that serious medical need exists only if "diagnosed by physician as requiring treatment, or ... so obvious that even a layperson would easily recognize the necessity for a doctor's attention"). A prisoner's bare assertions are insufficient to establish a serious medical need. Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994).

The second prong of the deliberate indifference test is reached only if the first prong is satisfied. The second prong asks if, subjectively, the defendants actually knew of but disregarded, or were deliberately indifferent to the inmate's safety and well-being. Grayson v. Ross, 454 F.3d 802, 808-809 (8th Cir. 2006). Deliberate disregard or deliberate indifference is shown by an intentional delay in providing medical treatment if a reasonable person would know that the detained party requires medical attention "or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006) (citing Plemmons v. Roberts, 439 F.3d 818, 823 (8th Cir. 2006)). It is undisputed from the record that, prior to White's first suicide gesture on March 25, 2002, there were no objective serious medical needs of which the defendants could have disregarded or been deliberately indifferent to.

Between March 6, 2002 – March 25, 2002, White alleges that he repeatedly requested to see a physician and sought to obtain anti-depressant medications because of depression and suicidal thoughts. Although depression and suicide are serious medical conditions, White's bare assertions of these ailments are not enough to establish a serious medical need such that confinement posed a substantial risk of serious harm. However, on March 25, 2002, and again on March 26, 2002, White made a suicide gesture and/or attempted suicide. This obviously created an objective serious medical need. As a result, the Court is then required to examine the record to determine whether there is any evidence to support a finding that the defendants intentionally delayed providing

9

medical treatment or deliberately disregarded White's health, safety, and his serious medical condition. Even when the evidence is viewed in a light most favorable to the plaintiff (White) the Court is convinced that there are no genuine issues of material fact in dispute as to this particular claim.

Turning to the individual defendants in this case, the named law enforcement officers are entitled to judgment as a matter of law because there has been no evidence presented that they actually knew of and recklessly or deliberately disregarded a substantial risk of serious harm to White. A careful review of the affidavit submitted by White, <u>and</u> his handwritten diary notes, fails to disclose any specific evidence against the above-named defendants which would demonstrate subjective, deliberate indifference.

The evidence reveals that on March 25, 2002, when a jailer discovered White's minor abrasion on his wrist with dried blood, efforts were promptly undertaken to clean and bandage the abrasion. White was moved to a cell that was monitored by cameras so that he could be closely observed to ensure that any future suicide gestures or attempts could be prevented. During the late evening hours of March 25, 2002, or early morning hours of March 26, 2002, while White was in a monitored cell, he attempted suicide by tearing his coveralls and trying to hang himself. The jailer(s) immediately stopped White's attempt and thereafter stripped him of his clothes and his blanket in order to prevent any further attempts at suicide. On March 26, 2002, the jail staff allowed White to contact mental health specialists at IHS. White was taken to see a physician to have his wounds cleaned and bandaged. He was also placed on an anti-depressant that same day.

On March 28, 2002, White informed the staff at the jail that there were red streaks running up his arms which were indicative of an infection from his cuts. White was promptly taken to see

a physician and received a shot to address the potential for infection. Even viewing the evidence in a light most favorable to White, the evidence and sequence of events may arguably demonstrate negligence but it does not rise to the level of deliberate indifference to White's serious medical needs. There is a lack of sufficient evidence to support a claim of deliberate indifference to serious medical needs. The Court finds that there are no genuine issues of material fact as to the claim of an Eighth Amendment violation for failure to provide adequate medical care.

With respect to White's contention that the defendants were deliberately indifferent to providing him with prescription medications, the evidence fails to support a finding of deliberate indifference even when such evidence is viewed in a light most favorable to White. The record fails to support a finding that there was an objective basis for White's need for medication before March 26, 2002. When the need for medication was established, it is undisputed that the defendants undertook steps to ensure that medications were administered. White has alleged that he did not receive any medications on March 26, 2002, but the record speaks to the contrary. An exhaustive review of the record reveals that White has failed to produce any evidence which supports a finding that the alleged withholding of medication was deliberate or intentional under the circumstances. The record does support a finding that White was provided with his medications on March 27, 2002. See Docket No. 47-2, p. 14.

The evidence, when viewed in the light most favorable to White, does not support a finding of any unnecessary delay in providing medications. More important, there is no evidence that the defendants actually knew of and recklessly disregarded a substantial risk of serious harm to White if in fact his access to prescription medications was delayed. The Court finds that there are no genuine issues of material fact as to the claim of an Eighth Amendment violation for failure to

11

provide prescription medications. There may be evidence of negligence, but the record does not support a finding of deliberate indifference on the part of the defendants which is required to establish a constitutional violation.

### C.     UNSANITARY CONDITIONS

The Eight Amendment also prohibits punishment that "deprive[s] inmates of the minimal civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Conditions, such as a filthy cell, may be 'tolerable for a few days and intolerably cruel for weeks or months.'" Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (citing Hutto v. Finney, 437 U.S. 678, 687 (1978)). When reviewing the totality of circumstances of White's confinement, the Court focuses on the length of his exposure to unsanitary conditions and how unsanitary the conditions were. Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003). To prevail on an Eighth Amendment claim in this context, White must allege facts sufficient to satisfy the deliberate indifference standard.

The Eighth Circuit has provided some guidance as to what length of exposure to unsanitary conditions may constitute a violation of a detainee's constitutional rights. In Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996), the Eighth Circuit held that there was no constitutional violation for the confinement of a pretrial detainee in a cell with an overflowed toilet for four days. In Goldman v. Forbus, 2001 WL 838997, *1 (8th Cir. 2001) (unpublished per curiam), no constitutional violation was found to exist where a pretrial detainee was forced to sleep six nights on the floor next to a toilet where he was sprinkled with his cellmates' urine. Similar to the Eighth Circuit, in Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988), the Seventh Circuit held that an inmate was not

subjected to cruel and unusual punishment after spending five days in a roach infested cell without toilet paper. However, in Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003), the Eighth Circuit reversed and remanded for trial a case where a pretrial detainee spent five weeks in a detention cell where he had to sleep on the floor next to the toilet and his blanket was splashed by his cellmate's urine. The Eighth Circuit also found an Eighth Amendment violation when an inmate was confined for two years in a cell with feces on the walls, door, and food slot. Howard v. Adkison, 887 F.2d 134, 136 (8th Cir. 1989).

There is no clear standard for determining when pretrial detention is unconstitutionally punitive. The focus is on the length of the exposure to unsanitary conditions and how unsanitary the conditions were. As this circuit has recognized, a filthy, over-crowded cell may be "tolerable for a few days and intolerably cruel for a few weeks or months." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (citing Hutton v. Finney, 437 U.S. 678, 689 (1978).

The Eighth Circuit has also addressed the issue of exposure to cold and deprivation of clothing. In Gordon v. Faber, 973 F.2d 686, 687 (8th Cir. 1992), the circuit held that keeping inmates outdoors for one hour to one hour and forty-five minutes without hats or gloves in sub-freezing temperatures and windchill amounted to deliberate indifference that violated the prisoners Eighth Amendment rights. In Gordon, the court held that the guards were deliberately indifferent to the prisoners because hats and gloves were readily available and the guards had no justification for withholding them. However, there is no absolute right for a detainee to be given clothes or bedding. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). "[P]rison officials have a broad discretion to determine the methods by which they will carry out their responsibilities. McMahon v. Beard, 583 F.2d 172, 175 (5th Cir. 1978). Deprivations, such as clothing or bedding from a

13

suicidal person who is in custody do not violate the constitution. McMahon v. Beard, 583 F.2d 172, 175 (5th Cir.1978); see Rust v. Grammer, 858 F.2d 411, 414 (8th Cir. 1988) (providing that no laundry privileges, no prison yard privileges, restricted diet, and limited clothing and bedding, when done for limited time period in response to disruptive circumstances, does not rise to constitutional violation).

On March 25, 2002, at approximately 4:00 p.m. White was moved to a cell (commonly referred to as the "drunk tank") where a camera monitored his activities because he had exhibited a suicide gesture. The record reflects that White spent approximately ten hours in the drunk tank. Viewing the evidence in a light favorable to White, the cell was cold and filthy from urine and feces stains on the floor. White tore up his coveralls and attempted to hang himself but was stopped by the jailers. After White tried to hang himself with his coveralls, the jailers removed White's coveralls, blanket, and mattress, and he spent approximately the next two and a half hours in his underwear before being moved to another cell. On March 29, 2002, White was transported to Bismarck and placed in federal custody.

In viewing the totality of the circumstances, the Court finds that there is a lack of evidence to demonstrate that the defendants acted with deliberate indifference by placing White in the drunk tank to monitor his activities on March 25, 2002. The record discloses that White was placed in the drunk tank to be closely monitored by a surveillance camera in order to prevent the possibility of another suicide gesture or attempt. The removal of White's clothing and bedding was done for his protection, and to avoid another suicide attempt, rather than in an attempt to punish White.

On March 26, 2002, White was moved to a different cell. He spent the remaining three (3) days in custody in a security cell monitored by a surveillance camera which, according to White's

assertions, was dirty and had food and feces on the floor. White left the cell on several occasions to obtain medical treatment at Indian Health Services and he was ultimately taken into federal custody on the morning of the fourth day (March 29, 2002). The jailers' refused to provide cleaning supplies to White on March 28, 2002, but that, in and of itself, did not create a constitutional violation because the supplies were withheld to protect White from his own suicidal tendencies.

The Court finds that, although the jail conditions that existed in Fort Yates may have been deplorable, White's length of exposure (four days) to such conditions is not sufficient to have violated his Eighth Amendment rights under the current state of the law in the Eighth Circuit. The Eighth Circuit has held that inmate exposure to unsanitary conditions in a jail facility of even longer duration <u>was</u> <u>not</u> unconstitutional because of the brevity of exposure. As previously noted, a pretrial detainee was confined in a jail cell with an overflowed toilet for four days which was found not to rise to the level of a constitutional violation in <u>Smith v. Copeland</u>, 87 F.3d 265, 268 (8th Cir. 1996). In <u>White v. Nix</u>, 7 F.3d 120, 121 (8th Cir. 1993), no constitutional violation was found to exist when a pretrial detainee was confined in an unsanitary cell for eleven days. White's placement in two different unsanitary jail cells for a total of four days does not rise to the level of a constitutional violation, particularly when the Eighth Circuit has held that placement of a detainee in a jail cell for a longer duration in worse conditions was not found to be unconstitutional. Any analysis of confinement conditions must be based on the totality of the circumstances. In this case, White was placed in two different unsanitary, camera-monitored cells for a total of four (4) days while he was on suicide watch. The totality of the circumstances does not support a finding of an Eighth Amendment constitutional violation.

More important, to prevail on an Eighth Amendment claim in this context, an inmate must also show that the corrections officers were deliberately indifferent to the risk of harm posed by the unsanitary conditions. There is insufficient evidence to show that the named defendants acted with such deliberate indifference. The Court finds that there are no genuine issues of material fact as to White's claim of a violation of an Eighth Amendment right for unconstitutional conditions of confinement, and the claim fails as a matter of law.

### D.    **BOND PROVISIONS**

White also contends that the defendants violated his constitutional right against excessive bail by delaying a bond hearing and failing to respond to his numerous requests for bond reduction. To determine whether prison officials are entitled to qualified immunity, the Court must review the following factors: (1) whether White has alleged conduct that violates a constitutional right; (2) whether the constitutional right violated was clearly established; and (3) whether an official knew or reasonably should have known that the action he took would have violated the constitutional right. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006).

White has failed to produce sufficient evidence that the defendants have violated a constitutional right. White asserts that, despite having requested a hearing on his second day of detention, he was detained six days before he received a bond hearing which first occurred on March 12, 2002. White was represented by counsel at the bond hearing in Tribal Court. The Tribal Court set bond at $25,000 and determined that White was a flight risk. The bare allegations of a delayed bond hearing are not sufficient to show that the defendants acted with the deliberate indifference necessary to establish a violation of a constitutional right. The record is devoid of evidence that any

of the defendants acted with deliberate indifference in delaying or preventing White's bond hearings.

After carefully reviewing the entire record, the Court finds that White has failed to establish that the named defendants acted with deliberate indifference with respect to his requests for a bond hearing and a reduction in bond. White was represented by counsel at a bond hearing on March 12, 2002. The Tribal Court set bond at $25,000 and determined that White was a flight risk. Someone within the Tribal Court system in Fort Yates may have been negligent in failing to respond to White's repeated requests for a bond reduction and/or another bond hearing. However, there is a total lack of evidence to demonstrate that any of the named defendants bear that responsibility or that such conduct rises to the level of deliberate indifference. There are no genuine issues of material fact nor any evidence presented that the named defendants acted with deliberate indifference in this context. In summary, the Court finds that there are no genuine issues of material fact as to White's claim of a violation of his constitutional right against excessive bail provisions because of delayed bond hearings.

### E.   FAILURE TO TRAIN

Finally, White has alleged a claim under Bivens against defendant Lieutenant Mike Yellow for failure to train. White asserts that Yellow failed to train his subordinates in (1) ensuring that adequate medical care is provided, (2) ensuring that the detainee is promptly presented for a bond hearing, and (3) ensuring that a detainee is placed in a sanitary cell.

It is well-established that government officials may be held liable in damages for the constitutional wrongs engendered by their failure to train or supervise subordinates adequately.

Boswell v. Sherburne County, 849 F.2d 1117, 1122-1123 (8th Cir. 1988) (citing Hahn v. McLey, 737 F.2d 771, 773 (8th Cir.1984)). "This responsibility ... is bottomed on the principle that, in some contexts, failure of an official to safeguard against constitutional transgressions by subordinates constitutes an actionable wrong under 42 U.S.C. § 1983," and consequently under Bivens. Id.

To establish supervisory liability for failure to train, the Eighth Circuit has "held that a plaintiff must link the alleged constitutional violations to the supervisor['s] conduct by showing that the supervisor[] [was] 'deliberately indifferent' to the constitutional rights of the plaintiff." Boswell v. Sherburne County, 849 F.2d 1117, 1123 (8th Cir. 1988) (citing Wilson v. City of North Little Rock, 801 F.2d 316, 322 n.3 (8th Cir.1986)). As set forth above, there are no constitutional violations to which Yellow's conduct may be linked. Absent a violation of White's constitutional rights, there is no underlying basis for which the supervisor may be liable.

For the reasons set forth above, White has not created a genuine issue of material fact as to any of the alleged constitutional violations. The Court finds that White's claims of supervisory liability for failure to train fails as a matter of law.

### F.     STATUTE OF LIMITATIONS

In support of their motion for summary judgment, defendants asserted an affirmative defense that the statute of limitations had expired on White's action under Bivens. Defendants have since abandoned that defense, and it will not be considered by the Court.

### IV.     CONCLUSION

For the reasons outlined above, the Court **GRANTS** the Defendants' Motion for Summary Judgment, (Docket No. 41). A showing of deliberate indifference requires far more than a showing of mere negligence or even gross negligence. The plaintiff has failed to present evidence to meet the deliberate indifference standard required to support a constitutional violation. The Court also **DENIES** as moot Plaintiff's Motion to Extend Deadline (Docket No. 55). The Plaintiff's claims under Bivens and 42 U.S.C. § 1983 are **DISMISSED** with prejudice. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 11th day of October, 2006.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court